Good morning, your honors. My name is Ani Ahmed. May it please the court, I represent the government in this case on this appeal. May it please counsel as well. Your honor, there are two issues in the United States' brief as to why the evidence in this case should not have been suppressed. The first issue is as to the blue cylinder attached to the keychain, which was recovered from the defendant's hands at the time of his arrest. As you may recall, your honors, the defendant was arrested for driving while his license was suspended, as well as careless and reckless driving. When the officer approached the defendant after talking to an elderly gentleman who had stated that he had seen the blue truck racing up and down. Before you get too far. Yes, your honor. You say he was arrested for. Yes, your honor. When was it discovered that he had a suspended license? Your honor, when the officer initially approached the truck, the defendant identified himself, indicated that he did not have. Why was the vehicle stopped? The vehicle was stopped because it was the officer had actually witnessed the defendant almost going through a stop sign and then reversing the vehicle at a high rate of speed, almost hitting another vehicle and then doing a three point turn in the middle of the street. But the suspension was not discovered until after the vehicle was stopped. That is correct, your honor. The defendant gave the officer his name. The officer returned to his vehicle to check on the license, found out it was suspended. After talking to the elderly gentleman, the witness, he went back to the vehicle and informed the defendant that he to step out of the car, that he was being arrested and the reasons for arrest. At the time when the defendant got out of the car, your honor, he had a blue cylinder key chain in his hand, in one hand and a cell phone in the other. The officer took these two objects, placed them on the on the seat, the driver's seat of the vehicle, and then handcuffed the defendant, took him to his vehicle. At that time, there was a conversation as to whether the defendant would be allowed to call a friend. The officer indicated to the defendant at that point that he intended to impound the vehicle. You're kind to describe what happened as a conversation. There was some yelling by the defendant, right? Correct, your honor. He was not the sweetest, kindest person in the world. Right, your honor. As the court knows, initially when he was stopped, he got out of the vehicle and was pretty abusive with the police officer. In the event, before any search took place, Maddox was handcuffed and in the back seat of the squad car, right? Correct. And the officer had informed him that he intended on impounding the vehicle. And at that point, the officer returned to the vehicle and grabbed the cell phone and the blue cylinder keychain. Now, I understand that the district court had indicated that, well, there may be a legitimate reason for having this blue cylinder keychain, and you needed probable cause, at least, to search that keychain. The government disputes this. While there could have been certainly a legitimate reason for having a blue cylinder, I would think that under the circumstances, what was reasonable is he had searched him incident to arrest, and you don't need probable cause. The object was actually found on the defendant, and as the government argued to the lower court, that, in fact, the officer never gave up possession of that item. He simply laid it on the driver's seat while he secured the defendant. So are you distinguishing, then, in your argument, if this keychain had been in the car itself, then you would say Gant applies? But since it was on the defendant, Gant doesn't apply? Correct, Your Honor. It was found on the defendant. Obviously, Gant wasn't in effect at the time, but if, in fact, the case was a Gant case, which it would have been, if he had searched the vehicle and found this blue keychain for the first time in that vehicle, at the time, I mean, just because you're arresting somebody would not authorize you to go in the vehicle under Gant unless you had probable cause. Or, in fact, the defendant could reach that item immediately while you're conducting the search, and that was not the case. What was the probable cause for opening the container? He did not have any probable cause to open the container, Your Honor. It was searched incident to the arrest of the defendant, and the officer submitted to this. He said, I didn't know what was in the container. I simply looked at it. I unscrewed the top, discovered methamphetamine, what he believed to be methamphetamine. He later field-tested it after he'd found the two pounds of methamphetamine in the laptop. But at the time, he had no probable cause. There's no claim that they looked inside the container to make sure that there was nothing that would be inimical to the officer's safety? No, Your Honor. There was no claim of officer's safety with respect to that opening? No, Your Honor, but I would submit to the court that under U.S. v. Robinson, you don't need just a safety issue. In fact, that court said that a full search of the entire arrestee is permissible, and there was two issues, actually. It's not just the safety of the defendant or the police officer that we're talking about, but it's also the prevention and destruction of evidence. In U.S. v. Robinson, that's talked about, and any delay that the lower court talked about is referred to in U.S. v. Turner. So you're suggesting, then, that there is a bright-line rule about what might be searched as to on the person and in contrary to the vehicle after arrest? Correct, and that's exactly what U.S. v. Robinson says. It's a bright-line rule, and we've seen case after case in this circuit as well as other circuits where officers, when they arrest an individual, they will search cigarette containers. Now, what's the language on Robinson that you rely on? Your Honor, Robinson says that there's no need for subjective fear of the defendant. It's not limited to a frisk, and, quote, full search of the arrestee is permissible. Right, but what in that gives you the right to look? Let me give you this scenario. Let's assume an arrestee is carrying a suitcase. Is it your position, then, that in incident to an arrest for speeding or some other traffic violation, which is what we have here, that that gives the police the right to search the suitcase? If he is arrested with a suitcase on him, Your Honor, as opposed to, like, in a vehicle? Well, I don't know how you would have a suitcase on you any more than this defendant's key chain was on him. Either of them were on him. One was in the car, and the other was in the ignition to the car, and the other would be, in my scenario, would be a suitcase that he's got in the car or with him. Your Honor, I would respectfully disagree with you. The key chain was actually in his hand when it was taken from him. Well, I understand. And so it wasn't in an ignition. If someone was arrested with a suitcase in his hand, and I would submit to you. So our scenarios or hypotheticals match here. Your position is that if he had a suitcase in his hand, that they could search the suitcase. Correct. If he was being arrested. Well, doesn't that disagree a little bit with US v. Chadwick? Didn't in US v. Chadwick the law enforcement officers search the luggage of the particular defendant? And the court held in that particular matter that they couldn't search the luggage. And in US v. Monclavo-Cruz, I'm not sure I say that right, they didn't even allow the officers to search a purse which was on a particular defendant. So it seems to me that we're really getting right there. Maybe luggage, maybe not luggage, maybe not purses. Keys? I think I can explain it, Your Honor. And there are obviously caveats, but what we're talking about is, how easy is it for the evidence to disappear at that time? When the person's handcuffed in the back of the car? Well, for example, one of the issues I thought about was he also had a cell phone on him at the time. Now, would that authorize the officer to search the cell phone, just like a luggage? Can you go back and easily destroy the contents of the cell phone if it's in fact this? Evidence of what? I mean, doesn't what he's being arrested for matter? He was arrested for reckless driving, right? I mean, what does that have to do with the cell phone or the key? How is that evidence of anything? Well, Your Honor, I think it differs because in search of a person, it does not matter. At least on case law, it states that for any reason whatsoever, I mean, if you're arrested for it, and we've seen citations, we've seen a person in an alleyway attempting to have sex, and the courts have ruled that they can search the person. If you find a cigarette pack or tin foil with controlled substances on them, then that's a legitimate search. Let's imagine in this case the driver is a woman, and she's asked to exit the vehicle. She gets out. She has her purse over her shoulder, and she either puts it back in the car or the officer takes it off and puts it in the car. She's arrested, handcuffed, put in the back of the squad car. Are you saying the officer could search the purse? Yes, Your Honor. He could because it could prevent the destruction of evidence if he's going to. . . Evidence of what? Well, it doesn't matter, Your Honor. You don't need a particular subjective belief that there is evidence. This is a traffic violation. Correct, and he could still search. There are two reasons. Number one is safety, and then destruction of evidence. He doesn't have to know that there's evidence in that purse to, in fact, search it if it was on her purse at the time. Okay, let's make the driver a lawyer, and he's got his briefcase in the passenger seat. When he gets out of the car, he's got his lawyer's briefcase, and on the side of it it's stamped, Attorney Client Privileged Material. He puts it back inside. He's arrested, put in the squad car. Could the officer search the briefcase? Your Honor, I think that would be a tough call for the officer at that time, but I think that under the precedent . . . If he called you and said, do I need a warrant, would you tell him to go ahead and search? I would tell him, if he called me, that that is an item that we could get a search warrant for. There is nothing that would destroy the evidence immediately. In this case, that's different. Might be drugs in there. Might have mislabeled that briefcase. Might be, but, Your Honor, I think we would have an opportunity, to be sure, to go back and get a search warrant so it would not be suppressed. How do we . . . If you're going to go so far as to the purse, how do I distinguish United States v. Manclavo Cruz, 662 Fed 2nd at 1286? There, the officer took both the defendant and the purse to an immigration office and did not open the purse until an hour after the arrest. And it seems to me that in that particular case, once they came to that situation, they said it cannot be searched. Your Honor, I would distinguish it this way, and I would point out to the case of Gustafson v. Florida, and I'm looking at specifically at 492. It said that one of the reasons to conduct the search is not only to disarm, but also to discover evidence. And it does not depend, and I'm quoting here, it does not depend on what a court may later decide was a probability in a particular arrest situation that weapons or evidence would, in fact . . . What case is this you're saying? This is Gustafson v. Gustafson. And I'm citing page 492, Your Honor. So whether the officer believed that, in fact, he's going to find evidence is irrelevant. If he, in fact, found an item on a particular person, and that evidence could be destroyed, the contraband could be easily destroyed, then I would submit to the court that he has a right to search it. In this case, we're talking about a blue cylinder, and his only alternative was there were two. He could have put it on property at that point, or as the facts lay out, he was going to actually give it to the tow truck driver to drive away. But how do you distinguish Gant? Because it seems to me that the opening and closing of this case is Gant. Is there, they found a jacket in the back seat, and it had cocaine, and that violated the Fourth Amendment, right? He was the, because the occupant couldn't even have accessed it. Your Honor, I think the key word here . . . And we got not the back seat, but the front seat. But we still have the guy handcuffed, so he can't access. It seems to me that's Gant. I would distinguish it this way, Your Honor. All right. The word search. He had the item. He knew of the item. He's not looking for any sort of items that he doesn't know the existence of. In Gant, they didn't know that there was heroin, or I believe it was heroin, in the guy's coat pocket. Well, in this case, they didn't know there was whatever in the container in the key chain either. But in Gant, they were conducting a search, Your Honor. In this case, he already knows the blue cylinder. He is appropriately taking possession of it, because he's already decided to inventory the vehicle or impound the vehicle. He lawfully went back and took an item from where he placed it. Now, if the court would say, well, you placed it in the vehicle. From now on, you've got to place it on the roof of the vehicle, or you've got to put it in your pocket, or you've got to legitimately hold on to the item as you recover it from the defendant. I think it takes away from the safety of the officer, Your Honor. He has to handcuff the individual. He has to place the item which he can closely access, and that's what he did in this case. He took it from his pocket and put it on the seat. It was closely available to him. He wasn't thinking, well, I should put it on the roof, because we've got Gant with what hadn't been decided at the time. We've got Gant coming up in a few months. And so I would submit to the court I'm running out of time here, but there was a proper inventory in this case, and there was probable cause based on what he had found in the container to search the rest of the vehicle. And I think the police officer reasonably says that he didn't see the laptop until he actually got to the bed of the truck. Thank you. Good morning, Your Honors. My name is Matt Campbell. I represent Mr. Maddox. I'm from the Federal Defenders of Eastern Washington in Idaho. I believe that the court essentially, during questioning, got to the crux of this issue. I believe this case is squarely controlled by Enclavo-Cruz. The keychain is the functional equivalent of the purse in Enclavo-Cruz. I guess I want you to then, if that's really where you're going, Enclavo-Cruz relates back to Chadwick, it seems to me. And in Chadwick, it seems to me that the Supreme Court is saying, once the law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, there is no longer any danger the arrestee might gain access to the property. So it seems to me what we're really talking about here is not immediately associated with the person of the arrestee. Now, if I look at Enclavo-Cruz again, not immediately associated with the person of the arrestee, counsel's argument is this is not an automobile search. This is a person search at an arrest. And it seems to me that he's saying this keychain was immediately associated with the person of the arrestee, taken right out of his hand, therefore search. Now, tell me where Enclavo or Chadwick or any other case suggests a different rule. Well, I think the issue is... And the language thereof. Certainly. In Enclavo-Cruz, the court addressed the purse. And the purse in question, it was debatable whether it was on the... I believe it was the passenger woman's lap on her arm. It was not 100% clear from the record. However, the Ninth Circuit essentially said, we don't believe that that fact in and of itself makes a difference. It is on... The purse is a container. They distinguished it from all the other cases, including Robinson, Gustafson, which was cited by opposing counsel, where the container, as it will, to be searched, whether it was a cigarette pack or the like, was actually on the person, as in inside a coat pocket, which I believe was the case in Robinson. So I don't think we can divorce ourselves from the issue that these exceptions to the warrant requirements stem from the need to either preserve evidence or guard officer safety. Now, in Robinson, if there's a cigarette pack in someone's pocket, for example, presumably the officer is going to look at that, say, okay, there's nothing dangerous in there, there's no evidence of the crime for your arrest, and leave it there. That was never going to happen here because... Are you suggesting then that if the officer had taken these keys from the defendant's pocket, it would be different? Obviously, that's a situation we don't have. I think that... Oh, but I mean, you're articulating a policy here. I'm looking at what do I have to do to find immediate access or immediate association with the person of the arrestee? I mean, it seems to me that I'm saying to myself, well, if he had to take it out of his pocket, why is that any different than taking them right out of his hand? He had them in his hand, and he gave it to him. Why is it any different? I mean, I guess, would it change if the container attached to the keys were larger than this little packet? I would submit that size is not the issue. Okay. And that, in fact, the issue is, is the item at the time of the search located on the person? At the time of this search, it was not located on the person. It was located in his hands. At the time of the search, he was located in the back of the truck. It doesn't matter if we didn't have a vehicle involved and we had this guy out there on the sidewalk. The fact that it was on his hands and they put it in the sidewalk wouldn't make any difference. The only reason you're coming with Gant and you're coming with a purse and you're coming with luggage is because it deals with, in that instance, a car. And so you're trying to get the car search into the individual search, and that seems to be counsel's argument. If it's an immediate association with the person, why should it matter? It was in his hands when they took it away from him. It was in his hands, but I believe that had they intended on, for example, had there been an issue as to whether or not he had a driver's license and they were going to say, okay, step away while we run your license and we're going to give it back to you, then the twin purposes of preservation of evidence and or officer safety, if the container was big enough to contain a razor blade or something like that, that those would exist. But here he was never going to get the keys back. There was no probable cause, and he didn't have them. This is Monclavo-Cruz, where the purse was, whether it was on her shoulder or on her person, it was with her. Monclavo-Cruz does not say that the purse was in the back seat or in the trunk. It was on her person. It simply was not inside her clothing. And the court of Monclavo-Cruz essentially said, perhaps this is an arbitrary line between a wallet or a cigarette pack. Nevertheless, it was a line they were willing to draw, and they said that a purse is more like a suitcase, is more like an attaché case. Well, but it seems to me one could say they said, if it's immediately associated with the person, in other words, if it's something they're carrying, something in their pockets, something that they've got immediately associated to them, then search. And a purse isn't immediately associated. It's carried around. A suitcase isn't. But somebody who has, it seems to me that what you're asking me to distinguish between in the pocket or in the hand. I guess I don't, I can't differentiate between holding something in your pocket and holding it on your lap as a passenger, which is exactly what the situation was in Monclavo-Cruz. Well, it does follow that under Gant, the coat was in the back seat of the car. In Monclavo-Cruz, the coat was on the person's body, right? Correct. The purse. The purse. So the court says if it's immediately associated with the person, it's okay to search it. In Monclavo-Cruz, they said you could not search a purse that was on her body. It was not on her body. That's the point. The point is she was carrying it. It wasn't on her body. Well, she was carrying it or it was on her lap or, I mean, it was certainly immediately accessible to the same extent that if I'm holding a key chain, that would be immediately accessible to me. I don't see a principal way to distinguish between those two. The last point I would like to make, unless the Court has further questions, is that I believe the government errs in essentially trying to argue this case as if it were on a blank slate. These arguments were raised before Judge Whaley at the district court. Judge Whaley engaged in a full evidentiary hearing, heard these facts. The standard of review for this Court is on mixed questions, is whether it's clearly erroneous on issues of fact, it's clear error. There have been none shown here. What fact question is the government really fighting about? There is no question of fact. This defendant had keys in his hands that he gave to the officer when the officer arrested him and then was put in the car. The only thing we have in front of us is whether the district court correctly applied the law that was in front of it to the facts. There's no clear error analysis here. It's all about law, what law should apply. I would submit that, and I don't know whether the Court wants to get into this, but toward the end of counsel's statement, he did mention the inventory search, which is something that I understand. Well, I understand what he was saying is, well, you either search it there or you go to the inventory search, which was also valuable, he says, or valid in his. So you may want to address that, but that was his argument. They made him an offer to allow an inventory search, and he said no, didn't he? They didn't actually make any offer, to be honest. They said they were going to impound the car, and they just went ahead and did it. He said no. He said, I'll have my friend come pick it up. Oh, that's correct. He did say he wanted to have a friend pick it up. They didn't actually ask him whether he wanted to waive it formally, but nevertheless. He asked. He asked if he could make arrangements to have a friend pick up the car. And they said no. Right, that they were already going to impound it. And weren't they following out, then, the local procedures of the police department by doing that? No, Your Honor. Under Wanlis, they are allowed to follow local procedures, but the local procedures under cases such as State v. Williams, State v. Hill, State v. Hauser, require the consideration of reasonable alternatives. Well, but Wanlis isn't appropriate in this case. There's no registered owner. The prior owner had reported it sold. As Judge Whaley discussed, however, Mr. Maddox was, in fact, the owner. He adequately explained. There was no way to show that at the time. The car had never been reported stolen. He explained how he actually acquired the vehicle. Oh, and the police are supposed to rely on the testimony of the guy who's standing there when there is no registration, there's no objective sign of it, and therefore they're supposed to go with that, and the prior owner had reported it sold? How does Wanlis even come in? I mean, the very thing Wanlis relied on, that they knew who the owner was. That's correct, Your Honor, but Wanlis stands for the broad proposition that an inventory or an impound inventory must be assessed under local law. Under local law, this inventory was improper. The officer never considered reasonable alternatives. If you look at the impound policy, the local impound policy, and I'd point to, I believe it's excerpts of record, page 173, policy 33.5.8, states that not only must the officer consider reasonable alternatives, the officer must document the reasonable alternatives that he considered. The officer never stated a single reasonable alternative that he considered. There's nothing in the report. There's nothing in his testimony. He never made any consideration. That's what Judge Whaley found. On the last page of his order, I believe it's on the last page, he clearly states, no reasonable alternatives were considered. I believe that is a fact, that the officer never considered them. I believe that Judge Whaley used that fact to apply the law in Wanlis, so I believe that's another example of either a clear error standard or a clearly erroneous standard. Since the inventory wasn't conducted according to both the local policy and according to state law, they can't use the inventory as a standard. Are you suggesting that Judge Whaley's, that his application of the law to these facts, I can only undo under a clearly erroneous standard? Is that what you just said? If I did, that's not precisely what I meant, and I apologize. Okay. No, what I'm saying is that mixed fact law questions are not necessarily reviewed de novo to the extent that they rely on a factual information. Well, they're certainly de novo review of the law to be applied. Of a legal question, correct. But the clear error has to do with the facts of the judge. That's why I was trying to make sure. Correct, and if I misstated that, I apologize. That wasn't my intent. But in any event, our position all along as we briefed is that we can't, that the inventory search was not conducted by state law or local policy. That's what Judge Whaley found based on the facts, and that in terms of the search incident to arrest issue, the Gantt issue, we can't divorce ourselves from the facts that, or the issue that. There was no likelihood, as Judge Whaley found, that a weapon could be there. There's no likelihood in a traffic stop that you're going to find additional evidence, and I believe all the cases say, in essence, you don't get a free search of somebody's possessions. But Counsel, it is true that if one can validly open this container, then one could search the automobile. That fact was never really litigated in the district court. Judge Whaley did not make that finding. He found what occurred. Well, but Judge Whaley found that he shouldn't have opened the container at all. Correct. But if, in fact, he validly opened the container, then there isn't much left to say about whether they could search the automobile for the meth. Because at that point, they would have probable cause. I believe they might have probable cause to arrest for personal use. But not search the automobile? I believe that issue would have to be litigated before the district court. The law is different in the Ninth and the Tenth, but that seems to me a rather incredible proposition. My position is that that issue simply wasn't litigated and that Judge Whaley never decided that. Well, there's no question Judge Whaley went the other way, but I think it's obvious to go the other way because if he'd gone the other way, the search of the vehicle was obvious under any law because they had probable cause at that point. Again, at this point, I would say that it would need to be litigated before the district court. Thank you. Counsel for the government, did you have any time left? I can't remember. None? All right. Good arguments, both of you. Thank you. Very, very tough question. Turns on very difficult facts. Appreciate you both. Thank you very much. Case 09-30284 is here submitted.
judges: Lucero, Hawkins, Smith N. R.